GORLICK, KRAVITZ & LISTHAUS, P.C.
Barbara S. Mehlsack, Esq. (BM 1390)
17 State Street, 4th Floor
New York, New York 10004
(212) 269-2500
bmehlsack@gkllaw.com

Attorneys for Plaintiffs

**CV 05 2336**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

RAMMERS AND PAVERS UNION, LOCAL 1010 OF
THE LABORERS INTERNATIONAL UNION OF
NORTH AMERICA, ASPHALT WORKERS UNION
LOCAL 1018 OF THE LABORERS INTERNATIONAL
UNION OF NORTH AMERICA, PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL, and VINCENT R.
MASINO, as Trustee,

                     Plaintiffs,

           - against -

LUCIANO FALZONE, ROBERT MARESCO, JOHN
MORELLO, ALFONSO LETO, CALOGERO
FALZONE, ROLAND BEDWELL, CONSTANTINO
SEMINATORE, DAVID MONTELLE, ROCCO
CIANCIO, JOSEPH PAESANO, JOSEPH J. MONTELLE,
LOWELL F. BARTON, FRANCIS FERNANDEZ,
ANIBAL V. RIBEIRO, ALFONSO COLON, J. FERRO,
PAVERS & ROAD BUILDERS DISTRICT COUNCIL
PENSION FUND, PAVERS & ROAD BUILDERS
DISTRICT COUNCIL WELFARE FUND, PAVERS AND
ROAD BUILDERS DISTRICT COUNCIL ANNUITY
FUND, PAVERS AND BUILDERS DISTRICT
COUNCIL APPRENTICESHIP, SKILL IMPROVEMENT
& SAFETY FUND, PAVERS WELFARE FUND
HOLDING CORP., and UNITED PLANT AND
PRODUCTION WORKERS, LOCAL 175,

                     Defendants.

----------------------------------------------------------------X

05 Civ.    **KORMAN, CH. J.**

COMPLAINT   **LEVY, M.J.**

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ **MAY 1 3 2005** ★

**BROOKLYN OFFICE**

Plaintiffs RAMMERS AND PAVERS UNION, LOCAL 1010, LABORERS

INTERNATIONAL UNION OF NORTH AMERICA (hereinafter referred to as "Local 1010"),

ASPHALT WORKERS UNION, LOCAL 1018, LABORERS INTERNATIONAL UNION OF NORTH AMERICA (hereinafter referred to as "Local 1018"), PAVERS & ROAD BUILDERS DISTRICT COUNCIL (hereinafter referred to as ""District Council")(sometimes collectively referred to as the "Union Plaintiffs"), and VINCENT R. MASINO as Trustee of the Union Plaintiffs (hereinafter referred to as "Trustee")(sometimes collectively referred to as "Plaintiffs"), by and through their attorneys, GORLICK, KRAVITZ & LISTHAUS, P.C., as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.     This is a civil action brought pursuant to the Labor Management Relations Act Section 301, 29 USC §185 and supplemental state law::

a)     against Lucian Falzone, Robert Maresco, John Morello, Roland Bedwell, Alfonso Leto, Calogero Falzone, Constantino Seminatore, David Montelle, Rocco Ciancio, Joseph Pacsano, Joseph J. Montelle, Lowell F. Barton, Francis Fernandez, Anibal V. Ribeiro, Alfonso Colon, and J. Ferro (hereinafter the "Individual Defendants") for breach of their respective duties and obligations as officers and members under the constitution of the Laborers International Union of North America ("LIUNA") and the respective constitutions of the Union Plaintiffs and to enforce emergency trusteeships imposed by the Laborers International Union of North America ("LIUNA") on Locals 1001, 1018 and the District Council respectively;

b)     against the individual Defendants for an accounting of any and all records and property of the respective Union Plaintiffs that are or at any time were in their custody, possession or control.

c)     to enjoin the Individual Defendants from refusing to cooperate with and from interfering with the proper exercise of the functions and duties of the temporary Trustee of the respective Union Plaintiffs;.

d)     against PAVERS AND ROAD BUILDERS DISTRICT COUNCIL PENSION FUND, PAVERS AND ROAD BUILDERS DISTRICT COUNCIL WELFARE FUND, PAVERS AND ROAD BUILDERS DISTRICT COUNCIL ANNUITY FUND, and PAVERS AND BUILDERS DISTRICT COUNCIL APPRENTICESHIP, SKILL IMPROVEMENT & SAFETY

2

FUND ( for the misappropriation of the records and property of Locals 1010, 1018 and the District Council respectively.

      e)     against the Trust Funds and PAVERS WELFARE FUND HOLDING CORP. (hereinafter the "Holding Corp.") for an order granting Local 1010, Local 1018, the District Council, and the Trustee access to their respective offices at 136-25 37thAvenue, Flushing, New York 11354.

      f)     against UNITED PLANT AND PRODUCTION WORKERS LOCAL 175, ("Local 175") and the Individual Defendants for tortious interference with contracts between various employers and the respective Union Plaintiffs and for tortious interference with prospective business relations between various employers and the respective Union Plaintiffs.

    2.     Jurisdiction of this Court is invoked under the following statutes:

        (a)    § 301 of the Taft-Hartley Act (29 U.S.C. § 185);

        (b)    28 U.S.C. § 1331 (federal question);

        (d)    28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce)

        (e)    29 U.S.C. §462, 464

        (e)    28 U.S.C. § 1367 (supplemental jurisdiction).

    3.     Venue properly lies in this district under § 301 of the Taft-Hartley Act (29 U.S.C. § 185), and under 28 U.S.C. §§1391 (b).

## PARTIES

    4.     Plaintiff Local 1018 is a subordinate local of LIUNA; and a labor organization within the meaning of § 301 of the Taft-Hartley Act (29 U.S.C. §185) which represents employees in an industry affecting commerce as defined in § 501 of the Taft-Hartley Act (29 U.S.C. §142). Local 1018 maintains its offices and is administered at 136-25 37th Avenue, Flushing, New York 11354.

    5.     Plaintiff Local 1010 is a subordinate local of LIUNA; and a labor organization within the meaning of § 301 of the Taft-Hartley Act (29 U.S.C. §185) which represents employees in an industry affecting commerce as defined in § 501 of the Taft-Hartley Act (29 U.S.C. §142). Local 1010 maintains its offices and is administered at 136-25 37th Avenue, Flushing, New York 11354.

6.      Plaintiff District Council is a subordinate organization of LIUNA; and a labor organization within the meaning of § 301 of the Taft-Hartley Act (29 U.S.C. §185) which represents employees in an industry affecting commerce as defined in § 501 of the Taft-Hartley Act (29 U.S.C. §142). The District Council maintains its offices and is administered at 136-25 37th Avenue, Flushing, New York 11354.

7.      Upon information and belief, defendant Local 175 is an entity which claims to be a labor organization within the meaning of §301 of the Taft-Hartley Act (29 U.S.C. §185) and claims to represent employees in an industry affecting commerce as defined in § 501 of the Taft-Hartley Act (29 U.S.C. §142).

8.      Defendant Luciano Falzone was, until his resignation on May 6, 2005, a member of LIUNA, a member of the Executive Board of Local 1018 and President of the District Council. Upon information and belief he is currently Business Manager of Local 175.

9. .      Defendant Robert Maresco was, until his resignation on May 6, 2005, a member of LIUNA and President and a member of the Executive Board of Local 1018.

10.      Defendant John Morello was, until his resignation on May 6, 2005, a member of LIUNA, Recording Secretary, a member of the Executive Board of Local 1018, and a member of the Executive Board of the District Council.

11.      Defendant Roland Bedwell was, until his resignation on May 6, 2005, a member of LIUNA and a member of the Executive Board of Local 1018.

12.      Defendant Alfonso Leto was, until his resignation on May 6, 2005, a member of LIUNA, and Vice President and a member of the Executive Board of Local 1018.

13.      Defendant Calogero Falzone was, until his resignation on May 6, 2005, a member of LIUNA and Secretary- Treasurer and a member of the Executive Board of Local 1018.

14.      Defendant Constantino Seminatore was, until his resignation on May 6, 2005, a member of LIUNA and a member of the Executive Board of Local 1018.

15.      The aforesaid defendants and former members of the Executive Board of Local 1018 described in paragraphs 8 through 14, *supra* are sometimes referred to as the "Local 1018 Defendants").

16.      Defendant David Montelle was, until his resignation on May 12, 2005, a member of LIUNA, the Business Manager and a member of the Executive Board of Local 1010 and the

4

Secretary-Treasurer and Business Manager and a member of the Executive Board of the District Council.

17.    Defendant Rocco Ciancio was, until his resignation on May 12, 2005, a member of LIUNA, the President and a member of the Executive Board of Local 1010, and a member of the Executive Board of the District Council.

18.    Defendant Anibal Ribeiro was, until his resignation on May 12, 2005, a member of LIUNA, the Vice President and a member of the Executive Board of Local 1010, and a member of the Executive Board of the District Council.

19.    Defendant Joseph Paesano was, until his resignation on May 12, 2005, a member of LIUNA, the Recording Secretary and a member of the Executive Board of Local 1010.

20.    Defendant Joseph Montelle was, until his resignation on May 12, 2005, a member of LIUNA,  the Secretary-Treasurer and a member of the Executive Board of Local 1010.

21.    Defendant Lowell Barton was, until his resignation on May 12, 2005, a member of LIUNA, and a member of the Executive Board of Local 1010.

22.    Defendant Francis Fernandez was, until his resignation on May 12, 2005, a member of LIUNA, and a member of the Executive Board of Local 1010.

23.    The aforesaid defendants and former members of the Executive Board of Local 1018 described in paragraphs 16 through 22, *supra,* are sometimes referred to hereinafter as the Local 1010 Defendants".

24.    Defendant J. Ferro was, until his resignation on May 12, 2005, a member of LIUNA and a member of the Executive Board of the District Council.

25.    Upon information and belief, defendants PAVERS & ROAD BUILDERS DISTRICT COUNCIL WELFARE FUND, PAVERS AND ROAD BUILDERS DISTRICT COUNCIL ANNUITY FUND PAVERS AND BUILDERS DISTRICT COUNCIL APPRENTICESHIP, SKILL IMPROVEMENT & SAFETY FUND (hereinafter the " Trust Funds") are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements between signatory employers and plaintiffs Local 1010, Local 1018, and the District Council.  The Trust Funds are employee benefit plans which provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant

5

to the aforesaid collective bargaining agreements.   The Trust Funds maintain their offices and are administered at 136-25 37th Avenue, 4th Floor   Flushing, New York 11354.

26.    Upon information and belief, Defendant PAVERS WELFARE FUND HOLDING CORP. (hereinafter "Holding Corp.") is a domestic for profit corporation, which owns the building located at 136-25 37th Avenue Flushing, New York 11354.    The Holding Corp. is the landlord to Local 1010, Local 1018, and the District Council, each of which has leased premises on the fifth floor at that address.

27.    Until their resignation May 12, 2005, defendants Luciano Falzone, Alfonso Colon, David Montelle, Anibal Ribeiro, Rocco Ciancio, and John Morello also served on the Executive Board of the District Council.   Together with defendant J. Ferro, they are sometimes referred to hereinafter as the "District Council Defendants".   The Local 1018 Defendants, the Local 1010 Defendants, and the District Council Defendants are sometimes   referred to collectively as the "Individual Defendants".

## THE LIUNA CONSTITUTION

28.    The LIUNA Constitution provides with respect to the imposition of a trusteeship, including an emergency trusteeship, as follows:

Article IX Section 7.   TRUSTEESHIP

When in the opinion of the General President, action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or otherwise carrying out the legitimate objects of such subordinate body or the International Union, or to protect the organization as an institution, the General President may file charges against any officer or member with the General Secretary-Treasurer for hearing before the General Executive Board, or appointment a temporary trustee or, in the General President's sole discretion, a supervisor to take charge and control of the affairs of such subordinate body; provided, however, that prior to the appointment of such trustee or supervisor the General President shall cause to be issued a notice setting a time and place for hearing for the purpose of determining whether such temporary trustee or supervisor shall be appointed, but provided further, however, that where, in the judgment of the General President, an emergency situation exists within the subordinate body, a temporary trustee or supervisor may be appointed prior to such hearing, but such hearing shall then commence within 30 days and a decision made within 60 days after the appointment of such temporary trustee or supervisor; and further provided in all cases the subordinate body shall be advised of the reasons for the proposed or actual appointment of a trustee or supervisor, and that adequate notice of a hearing thereon at least 10 days prior to the date of the hearing shall be given to the subordinate body

6

involved. During the period of trusteeship, all the officers and delegates of the subordinate body are relieved of their particular trust. In the case of supervision, one or more of the officers or delegates may be removed from office at the direction of the General President. The subordinate body and the officers and members thereof shall cooperate with the trustee or supervisor designated by the General President, in order that the purposes of the trusteeship or supervision may be accomplished as soon as possible. The trustee or supervisor shall be authorized to take full charge of the affairs of the subordinate body, to appoint temporary officers or employees at any time during the trusteeship or supervision, and to take action as, in the trustee's or supervisor's judgment, is necessary for the preservation of the subordinate body and its interests. The trustee or supervisor shall, from time to time, report on the affairs and transactions of the subordinate body to the General President. The General President may remove trustees or supervisors at any time and appoint successor trustees or supervisors.

The trustee or supervisor, temporary officers and persons employed to carry on the affairs of said subordinate body, during the period of trusteeship or supervision, shall give bond in such form and amount as may be necessary to indemnify against possible financial loss.

The trustee or supervisor shall take possession of all such funds, books, records, and papers of the Local Union or subordinate body and tender receipt for same. The trustee or supervisor shall pay all outstanding claims, properly proved, if funds are sufficient.

## FACTUAL BACKGROUND

29.    Local 1018, LIUNA, was chartered by the LIUNA and represents construction workers engaged in road construction work in New York City. By letter dated May 6, 2005 the Local 1010 defendants sent notice to the General President of LUNA that they had resigned en masse from LIUNA.

30.    Effective May 9, 2005, the General President of LIUNA imposed an emergency trusteeship on Local 1018 and appointed Vincent Masino as Emergency Trustees. By letter dated May 9, 2005 notice was given to Local 1018 and its members of the emergency trusteeship and that a hearing would be held pursuant to the LIUNA Constitution. The stated reasons for the emergency trusteeship as set forth in the notice are a)that the resignation of the members of the Executive Board had left a void in the leadership of Local 1018 so that the Local 1018 was unable to function; and b) the former officers had violated their obligations and surrendered the Local's bargaining rights so that the Local 1018 was unable to enforce its collective bargaining agreements.

7

31.     Pursuant to Article IX, Sec.7 of the LIUNA Constitution, the subordinate body placed under trusteeship and its members and officers are required to cooperate with the trustee. The trustee is granted the authority to take such action as he or she deems necessary for the preservation of the subordinate body's interests. Pursuant to the LIUNA Constitution, a Trustee takes full control of the affairs of the trusteed subordinate body and is authorized to take such actions as in his opinion will preserve the subordinate body and its interests.

32.     The Trustee of Local 1018 directed his representatives to go to the offices of Local 1018 at 136-25 37th Avenue, Flushing, New York, on May 9, 2005, and to take custody and control of the property and assets of Local 1018 that were at that location.

33.     When the representatives of the Trustee arrived at the Local 1018 offices, all that they found was an empty desk and several empty boxes.

34.     The representatives of the Trustee returned to the offices of Local 1018 on May 10, 2005, and were provided with a list of the members of Local 1018. At that time the representatives asked for copies of the minutes of Local 1018's Executive Board and General Membership meetings, all check books and registers, all bank statements, all canceled checks, all payroll and general ledgers, all tax returns, all audits report, all LM-2 forms, trust indentures, participation agreements, trust plans, summary plan descriptions, the office lease, automobile leases, and collective bargaining agreements. All that the representatives were provided with at that time were canceled checks from 2002 and 2003.

35.     Based upon the Form LM-2 signed by defendants Robert Maresco and Calogero Falzone on March 18, 2005, as of December 31, 2004, Local 1018 had $333,314.00 of cash on hand, and total liabilities of $7,721.00.

36.     Article IX, Section 7 of the LIUNA Constitution provides, *inter alia*, that when a Trustee is appointed by the General President of LIUNA:

The trustee or supervisor shall take possession of all such funds, books, records and papers of the Local Union or subordinate body and tender receipt for same. The trustee or supervisor shall pay all outstanding claims, properly proved, if funds are sufficient.

37.     Article XVIII, Section 6, of the LIUNA Constitution provides as follows:

If a local union is suspended, dissolved, or ceases to exist, all of its property, funds, books, papers, and paraphernalia shall immediately revert to and become the

8

property of the International Union and the General President may forthwith, either personally or by deputy, take possession thereof for the International Union. Alternatively, in the General President's sole discretion, the International Union may refrain from taking all of the former Local Union's property, funds, books, papers, or paraphernalia.

The officers and members of said Local Union shall be severally and jointly responsible for such property, funds, books, papers and paraphernalia until the same are turned over to the General President or authorized representative.

38.     Pursuant to Article IX Sec. 6 of the LIUNA Constitution, the General President is empowered to conduct an investigation into the affairs of subordinate bodies, their officers and members and to examine the books and records of the subordinate body.

39.     On May 10, 2005, representatives of the Trustee contacted the Bank of New York to have a hold placed upon all of the bank accounts of Local 1018.

40.     On May 11, 2005, the Bank of New York agreed to transfer to the Trustee's control a Local 1018 bank account, which contained as of that date approximately $13,500.00. In addition, the records provided by the Bank of New York indicated that the Local 1018 defendants had transferred $318,000.00 to a restricted account during the three weeks prior to the resignations of the Local 1018 Defendants for which no other information was available to the Trustee.

41.     Upon information and belief, on May 9, 2005, in his new position of Business Manager of Local 175, defendant Luciano Falzone sent letters to all members of Local 1018 advising them that Local 1018 is no longer affiliated with LIUNA and that it has now merged with Local 175.

42.     Upon information and belief, at some time prior to May 6, 2005, the Local 1018 Defendants, acting as the Executive Board of Local 1018, advised all contractors with whom Local 1018 had collective bargaining agreements that Local 1018 was disclaiming all interest in being the collective bargaining representative of those employers' employees that were covered by the collective bargaining agreements.

43.     Upon information and belief, after the notice to the employers referred to in paragraph 37, the Local 1018 Defendants and Local 175 contacted the employers that had collective bargaining agreements with Local 1018 and advised said employers that Local 175 was now the collective bargaining representative for the employees of those employers.

9

44.     Upon information and belief, based upon the membership list provided to the representatives of the Trustee, on May 6, 2005, Local 1018 had 313 members.

45.     Upon information and belief, the Local 1018 Defendants and Local 175 have attempted to have all of the members of Local 1018 sign representation cards for Local 175 by falsely claiming to said members that Local 1018 had merged with Local 175.

46.     Article IV, Section 4 D of LIUNA's Uniform Local Constitution provides that the Secretary-Treasurer of a local union is responsible for keeping and maintaining all minutes of meetings, property, books, papers and records of all financial transactions of the local union and to turn them over to a representative of the General President, such as the Trustee, upon request.

47.     Article IV, Section 4 E of LIUNA's Uniform Local Constitution provides that the Business Manager of a local union is responsible for seeing that the affairs of the local union are conducted in accordance with the LIUNA Constitution.

48.     Article IV, Section 4 H of LIUNA's Uniform Local Constitution provides that the Executive Board of a local union has the duty of seeing that the affairs of the local union are being properly conducted in accordance with the LIUNA Constitution.

49.     Article IV, Section 6 of LIUNA's Uniform Local Constitution provides that "[u]pon termination of office, each officer shall turn over the books, papers, records and other property which came into the officer's possession, custody and control, to the organization."

50.     When the Local 1018 Defendants submitted their resignations from the Local 1018 Executive Board on May 6, 2005, they failed to turn over the books, papers, records and other property of Local 1018 to Local 1018 or to its duly appointed Trustee.

51.     By letters dated and sent via Express Mail on May 11, 2005, the Trustee advised each of the Local 1018 Defendants that the property of Local 1018 had not been turned over by said Local 1018 Defendants pursuant to LIUNA's Constitutions and Uniform Local Constitution and directed that said property and assets of Local 1018 be turned over to the Trustee or his designated representative on May 13, 2005, between the hours of 8:30 a.m. and 12:00 noon.

52.     On May 13, 2005, Plaintiffs received some eight boxes of documents alleged to contain records of the Union Plaintiffs as well as of another LIUNA entity and member of the District Council. Until Union Plaintiffs have had the opportunity to conduct a complete examination of the records received as well as to have access to their offices and to obtain the return of other

10

property of Local 1018, Local 1018 Defendants remain in violation of their constitutional obligations.

53.    Local 1010, LIUNA, was chartered by the LIUNA and represents construction workers engaged in road construction work in New York City. Effective May 12, 2005, the General President of LIUNA, imposed an emergency trusteeship on Local 1010 and gave notice to the Local and its officers and members. The stated reason for the trusteeship is that the leadership of the Local had failed to protect the collective bargaining rights of Local 1010 and had failed to maintain proper books and records. The Notice advises the Local that a hearing on the trusteeship will be held on notice pursuant to the LIUNA Constitution. The Notice appoints Vincent Masino to serve as Trustee of Local 1010.

54.    The District Council, was chartered by the LIUNA and consists of Local 1010, Local 1018, and Local 1042, each of which represents construction workers engaged in road construction work in New York City. Effective May 12, 2005, the General President of LIUNA, imposed an emergency trusteeship on the District Council and gave notice to the Council and its affiliated Locals The stated reason for the trusteeship is that the leadership of the District Council had failed to protect the collective bargaining and representational rights of Local 1010 and had failed to maintain proper books and records. The Notice advises the Local that a hearing on the trusteeship will be held on notice pursuant to the LIUNA Constitution. The Notice appoints Vincent Masino to serve as Trustee of Local 1010.

55.    On May 12, 2005, the Trustee went to 136-25 37th Avenue, Flushing, New York, the office building containing the offices of Local 1018, Local 1010, and the District Council as well as of the Trust Funds. Upon information and belief the office building is owned by the Holding Corp.

56.    The Trustee went to the offices of Local 1018, Local 1010 and the District Council on the Fifth Floor of the office building, and the door was locked, the lights were shut off, and there did not appear to be anyone in the offices. As the Trustee did not have a key, he directed that a locksmith be called to open the doors and install new locks.

57.    At that time, Anthony Franco, the Administrator of the Trust Funds appeared on the Fifth Floor and advised the Trustee that Local 1018, Local 1010, and the District Council did not have current leases for the offices, with the last written lease having expired on December 31 2003, and that the space had been rented to a new tenant.

11

58.    A representative of the building further advised the Trustee that although Local 1018, Local 1010, and the District Council had paid monthly rents through April of 2005, they had all orally surrendered their leases back to the Pavers Welfare Fund Holding Corporation and that there were no keys for the locks for the doors.

59.    Mr. Franco then advised the Trustee that he had no right to be in the office building and that if the Trustee had a locksmith change the locks on the doors he would have the Trustee and his representatives arrested for trespassing.

60.    On May 12, 2005, the entire Executive Board of Local 1010 resigned both from the Executive Board and their membership from Local 1010.

61.    On May 12, 2005, the entire Executive Board of the District Council resigned from the Executive Board.

## AS AND FOR A FIRST CLAIM FOR RELIEF

### (PLAINTIFF TRUSTEE'S DEMAND FOR AN INJUNCTION DIRECTING THE LOCAL 1018 DEFENDANTS TO RECOGNIZE THE VALIDITY OF THE LOCAL1018 TRUSTEESHIP)

62.    Plaintiff Trustee   repeats and re-alleges each and every allegation contained in paragraphs 1 through 61 of this Complaint, as if fully set forth herein.

63.    Pursuant to 29 U.S.C. §462 and in accordance with the procedural requirements of its constitution, LIUNA has properly and in good faith established an emergency trusteeship over Local 1018 for the purposes of  assuring the performance of collective bargaining agreements or other duties of duties of Local 1018 and  otherwise carrying out its legitimate objects as a labor organization.

64.    Accordingly, plaintiff Trustee demands an injunction directing the Local 1018 Defendants to recognize the validity of the trusteeship and cooperate with the Trustee.

## AS AND FOR A SECOND CLAIM FOR RELIEF

### (PLAINTIFF TRUSTEE'S DEMAND FOR AN INJUNCTION DIRECTING THE LOCAL 1010 DEFENDANTS TO RECOGNIZE THE VALIDITY OF THE LOCAL1010 TRUSTEESHIP)

65.    Plaintiff Trustee  repeats and re-alleges each and every allegation contained in paragraphs 1 through 64 of this Complaint, as if fully set forth herein.

66.    Pursuant to 29 U.S.C. §462 and in accordance with the procedural requirements of its constitution, LIUNA has properly and in good faith established an emergency trusteeship over Local 1010 for the purposes of  assuring the performance of collective bargaining agreements and other duties of duties of Local 1018 and  otherwise carrying out its legitimate objects as a labor organization.

67.    Accordingly, plaintiff Trustee demands an injunction directing the Local 1010 Defendants to recognize the validity of the trusteeship and cooperate with the Trustees.

## AS AND FOR A THIRD CLAIM FOR RELIEF

### (PLAINTIFF TRUSTEE'S DEMAND FOR AN INJUNCTION DIRECTING THE  DISTRICT COUNCIL DEFENDANTS TO RECOGNIZE THE VALIDITY OF THE DISTRICT COUNCIL TRUSTEESHIP)

68.    Plaintiff Trustee repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 of this Complaint, as if fully set forth herein.

69.    Pursuant to 29 U.S.C. §462 and in accordance with the procedural requirements of its constitution,  LIUNA has properly and in good faith established an emergency trusteeship over the District Council for the purposes of  assuring the performance of collective bargaining agreements and  other duties of the District Council and otherwise carrying out its legitimate objects as a labor organization.

70.    Accordingly, plaintiff Trustee demands an injunction directing the District Council Defendants to recognize the validity of the trusteeship over plaintiff District Council and to cooperate with the Trustee.

13

### AS AND FOR A FOURTH CLAIM FOR RELIEF

### (PLAINTIFFS' DEMAND FOR AN INJUNCTION DIRECTING DEFENDANTS TRUST FUNDS AND DEFENDANT HOLDING CORP. TO PERMIT ENTRY ONTO THE UNION PLAINTIFFS' PREMISES)

71.    Plaintiffs  repeat and re-allege each and every allegation contained in paragraphs 1 through 70 of this Complaint, as if fully set forth herein.

72.    Pursuant to 29 U.S.C. §462 and in accordance with its constitution and bylaws, LIUNA has properly established trusteeships over the Union Plaintiffs , for the purposes of assuring the performance of collective bargaining agreements and  other duties of duties of a bargaining representative, and otherwise carrying out their  legitimate objects as labor organizations.

73.    Pursuant to Article IX of the LIUNA Constitution, plaintiff Trustee is authorized to take full charge of the affairs of the Union Plaintiffs, as subordinate bodies to LIUNA, and to take all actions necessary to preserve the Union Plaintiffs and their interests.

74.    Upon  information and belief, the Union Plaintiffs remain tenants with leased premises at 136-25 37th Avenue, Flushing, New York 11354. A representative of defendants Trust Funds and/or defendant Holding Corp. orally advised plaintiff Trustee that the Union Plaintiffs had"orally surrendered their leases."

75.    Upon information and belief, defendants Trust Funds and/or defendant Holding Corp. have refused duly authorized representatives of plaintiff Trustee to enter the leased premises of the Union Plaintiffs.

76.    Plaintiff Trustee is unable to fulfill his obligations under Article IX of the Constitution without access to the leased premises of the Union Plaintiffs to determine whether all of the property, funds, books, papers, or paraphernalia of the Union Plaintiffs are available to him.

77.    The Union Plaintiffs are unable to function and to perform their daily obligations to their membership without access to the leased premises to determine whether all of their property, funds, books, papers, or paraphernalia are available to them.

78.    Given that plaintiff Trustee is unable to fulfill his obligations and the Union Plaintiffs are unable to function and to perform their daily obligations, the Union Plaintiffs will suffer irreparable harm if the injunction is not granted.

14

79.     Accordingly, the Union Plaintiffs and plaintiff Trustee demand an injunction directing defendants Trust Funds and defendant Holding Corp. to permit plaintiff Trustee and his representatives access to the leased premises of the Union Plaintiffs.

## AS AND FOR A FIFTH CLAIM FOR RELIEF

### (PLAINTIFFS' DEMAND FOR AN INJUNCTION DIRECTING DEFENDANTS TRUST FUNDS AND HOLDING CORP. TO TURN OVER ALL OF THE UNION PLAINTIFFS' PROPERTY IN THEIR POSSESSION OR CONTROL)

80.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 79 of this Complaint, as if fully set forth herein.

81.     Upon information and belief, defendants Trust Funds and/or defendant Holding Corp. continue to remain in possession of the Union Plaintiffs' books and records, including minutes from their meetings, lists of Union Plaintiffs' members, and each of the Union Plaintiffs' financial books and records, property, funds, papers, or paraphernalia.

82.     Upon information and belief, defendants Trust Funds and/or Holding Corp. have failed to permit plaintiff Trustee and representatives of the Union Plaintiffs access to any of the aforesaid books and records, property, funds, papers, or paraphernalia.

83.     Plaintiff Trustee is unable to fulfill his obligations under Article IX of the Constitution without access to all of the Union Plaintiffs' books and records, property, funds, papers, or paraphernalia.

84.     The Union Plaintiffs are unable to function and to perform their daily obligations to their membership without access to their own books and records, property, funds, papers, or paraphernalia.

85.     Given that plaintiff Trustee is unable to fulfill his obligations and the Union Plaintiffs are unable to function and to perform their daily obligations, the Union Plaintiffs will suffer irreparable harm if the injunction is not granted.

86.     Accordingly, the Union Plaintiffs and plaintiff Trustee demand an injunction directing defendants Trust Funds and defendant Holding Corp. to turn over all of the Union Plaintiffs' books and records, including minutes from their meetings, lists of their members, and their financial books and records, property, funds, papers, or paraphernalia currently in their possession.

15

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### (PLAINTIFFS DEMAND FOR AN INJUNCTION DIRECTING THE LOCAL 1018 DEFENDANTS TO TURN OVER ALL OF LOCAL 1018'S PROPERTY IN THEIR POSSESSION OR CONTROL)

87.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 86 of this Complaint, as if fully set forth herein.

88.    Upon information and belief, the Local 1018 Defendants are in possession of plaintiff Local 1018's books and records as well as other property of the Local, including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobiles.

89.    Upon information and belief, the Local 1018 Defendants have failed to permit plaintiff Trustee and representatives of plaintiff Local 1018 access to any of the aforesaid books and records, property, funds, papers, or paraphernalia, including automobiles.

90.    Plaintiff Trustee is unable to fulfill his obligations under Article IX of the Constitution without access to all of Local 1018's books and records, property, funds, papers, or paraphernalia and automobiles.

91.    Plaintiff Local 1018 is unable to function and to perform its daily obligations to its membership without access to its own books and records, property, funds, papers, or paraphernalia.

92.    Given that plaintiff Trustee is unable to fulfill his obligations and plaintiff Local 1018 is unable to function and to perform its daily obligations, plaintiff Local 1018 will suffer irreparable harm if the injunction is not granted.

93.    Accordingly, plaintiff Local 1018 and plaintiff Trustee demand an injunction directing the Local 1018 Defendants to turn over all of plaintiff Local 1018's books and records including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobiles currently in their possession or control.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (PLAINTIFFS DEMAND FOR AN INJUNCTION DIRECTING THE LOCAL 1010 DEFENDANTS TO TURN OVER ALL OF LOCAL 1010'S PROPERTY IN THEIR POSSESSION OR CONTROL)

94.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 93 of this Complaint, as if fully set forth herein.

16

95.    Upon information and belief, the Local 1010 Defendants are in possession of plaintiff Local 1010's books and records, including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobiles.

96.    Upon information and belief, the Local 1010 Defendants have failed to permit plaintiff Trustee and representatives of plaintiff Local 1010 access to any of the aforesaid books and records, property, funds, papers, or paraphernalia and automobiles.

97.    Plaintiff Trustee is unable to fulfill his obligations under Article IX of the Constitution without access to all of Local 1010's books and records, property, funds, papers, or paraphernalia and automobiles.

98.    Plaintiff Local 1010 is unable to function and to perform its daily obligations to its membership without access to its own books and records, property, funds, papers, or paraphernalia and automobiles.

99.    Given that plaintiff Trustee is unable to fulfill his obligations and plaintiff Local 1010 is unable to function and to perform its daily obligations, plaintiff Local 1010 will suffer irreparable harm if the injunction is not granted.

100.    Accordingly, plaintiff Local 1010 and plaintiff Trustee demand an injunction directing the Local 1010 Defendants to turn over all of plaintiff Local 1010's books and records including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobile currently in their possession or control.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

### (PLAINTIFFS DEMAND FOR AN INJUNCTION DIRECTING THE DISTRICT COUNCIL DEFENDANTS TO TURN OVER ALL OF THE DISTRICT COUNCIL'S PROPERTY IN THEIR POSSESSION OR CONTROL)

101.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 100 of this Complaint, as if fully set forth herein.

102.    Upon information and belief, the District Council Defendants are in possession of plaintiff District Council 's books and records, including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobiles.

17

103.    Upon information and belief, the District Council Defendants have failed to permit plaintiff Trustee and representatives of plaintiff District Council access to any of the aforesaid books and records, property, funds, papers, or paraphernalia and automobiles.

104.    Plaintiff Trustee is unable to fulfill his obligations under Article IX of the Constitution without access to all of the District Council 's books and records, property, funds, papers, or paraphernalia.

105.    Plaintiff District Council is unable to function and to perform its daily obligations to its membership without access to its own books and records, property, funds, papers, or paraphernalia.

106.    Given that plaintiff Trustee is unable to fulfill his obligations and plaintiff District Council is unable to function and to perform its daily obligations, plaintiff District Council will suffer irreparable harm if the injunction is not granted.

107.    Accordingly, plaintiff District Council and plaintiff Trustee demand an injunction directing the District Council Defendants to turn over all of plaintiff District Council's books and records including minutes from its meetings, lists of its members, and its financial books and records, property, funds, papers, or paraphernalia and automobiles currently in their possession or control.

## AS AND FOR A NINTH CAUSE OF ACTION
## (LOCAL 1018'S CLAIM FOR AN ACCOUNTING AGAINST THE LOCAL 1018 DEFENDANTS)

108.    Plaintiff Local 1018 repeats and realleges each and every allegation contained in paragraphs 1 through 107 of this Complaint, as if fully set forth herein.

109.    As former members of the executive board of plaintiff Local 1018, the Local 1018 Defendants were fiduciaries to Local 1018 and its members and LIUNA pursuant to the Labor-Management Reporting and Disclosure Act with obligations to, *inter alia,* maintain the books and records of Local 1018 and file its annual financial reports and further are obligated under the LIUNA Constitution to properly maintain the books and records of Local 1018.

110.    Upon information and belief, the Local 1018 Defendants were signatories to various bank and investment accounts entrusted with administering the assets of plaintiff Local 1018 which made them common-law fiduciaries.

111.    On May 6, 2005, the Local 1018 Defendants resigned as the Executive Board and as members of Local 1018. In doing so, the Local 1018 Defendants unilaterally terminated their right, and duty, to administer the property and assets of Local 1018 and assumed the duty to secure the property and assets for Local 1018.

112.    On May 9, 2005, an emergency trusteeship was imposed upon Local 1018 pursuant to LIUNA's Constitution. That same day, agents of the Trustee entered into Local 1018's premises and determined that Local 1018 property, including books and records and computers, was missing.

113.    In addition, the agents of the Trustee found woefully incomplete information with regard to the present locations of Local 1018's bank and investment accounts, leaving them unable to determine where all of Local 1018's monies are being held and in what amounts.

114.    Upon information and belief, the Local 1018 Defendants have wrongfully converted Local 1018's property including the books and records, computers, and monetary assets.

115.    As a result of the Local 1018 Defendant's breach of their constitutional obligations and wrongful conversion, an accounting is necessary, as no adequate remedy at law exists in the absence of the books and records necessary to determine the value of Local 1018's present assets.

116.    By reason of the foregoing, the Local 1018 Defendants should be directed to provide an accounting of all the property, assets, debits, and expenditures of Local 1018 for a period to be determined by the Court.

## AS AND FOR A TENTH CAUSE OF ACTION
## (LOCAL 1010'S CLAIM FOR AN ACCOUNTING AGAINST THE LOCAL 1010 DEFENDANTS)

117.    Plaintiff Local 1010 repeats and realleges each and every allegation contained in paragraphs 1 through 116 of this Complaint, as if fully set forth herein.

118.    As former members of the executive board of plaintiff Local 1010, the Local 1010 Defendants were fiduciaries to Local 1010 and its members and LIUNA pursuant to the Labor-Management Reporting and Disclosure Act with obligations to, *inter alia,* maintain the books and

19

records of Local 1010 and file its annual financial reports and further are obligated under the LIUNA Constitution to properly maintain its books and records.

119.    Upon information and belief, the Local 1010 Defendants were signatories to various bank and investment accounts entrusted with administering the assets of plaintiff Local 1010 which made them common-law fiduciaries.

120.    On May 12, 2005, the Local 1010 Defendants resigned as the Executive Board and as members of Local 1010. In doing so, the Local 1010 Defendants unilaterally terminated their right, and duty, to administer the property and assets of Local 1010 and assumed the duty to secure the property and assets for Local 1010.

121.    On May 12, 2005, an emergency trusteeship was imposed upon Local 1010 pursuant to LIUNA's Constitution. That same day, agents of the Trustee attempted to enter into Local 1010's premises to locate and take possession of Local 1010 property, including books and records and computers, but were denied access.

122.    In addition, the agents of the Trustee found woefully incomplete information with regard to the present locations of Local 1010's bank and investment accounts, leaving them unable to determine where all of Local 1010's monies are being held and in what amounts.

123.    Upon information and belief, the Local 1010 Defendants have wrongfully converted Local 1010's property including the books and records, computers, and monetary assets.

124.    As a result of the Local 1010 Defendant's breach of their constitutional obligations and wrongful conversion, an accounting is necessary, as no adequate remedy at law exists in the absence of the books and records necessary to determine the value of Local 1010's present assets.

125.    By reason of the foregoing, the Local 1010 Defendants should be directed to provide an accounting of all the property, assets, debits, and expenditures of Local 1010 for a period to be determined by the Court.


## AS AND FOR A ELEVENTH CAUSE OF ACTION
### (DISTRICT COUNCIL'S CLAIM FOR AN ACCOUNTING AGAINST THE DISTRICT COUNCIL DEFENDANTS)


126.    Plaintiff District Council repeats and realleges each and every allegation contained in paragraphs 1 through 125 of this Complaint, as if fully set forth herein.

20

127.    As former members of the executive board of plaintiff District Council , the District Council Defendants were fiduciaries to the District Council and its members and LIUNA pursuant to the Labor-Management Reporting and Disclosure Act with obligations to, *inter alia,* maintain the books and records of the District Council and file its annual financial reports and further are obligated under the LIUNA Constitution to maintain its books and records.

128.    Upon information and belief, the District Council Defendants were signatories to various bank and investment accounts entrusted with administering the assets of plaintiff District Council which made them common-law fiduciaries.

129.    On May 12, 2005, the District Council Defendants resigned as the Executive Board of the District Council. In doing so, the District Council Defendants unilaterally terminated their right, and duty, to administer the property and assets of the District Council and assumed the duty to secure the property and assets for the District Council.

130.    On May 12, 2005, an emergency trusteeship was imposed upon the District Council pursuant to LIUNA's Constitution. That same day, agents of the Trustee attempted to enter into the District Council's premises to locate and take possession of District Council property, including books and records and computers, but were denied access.

131.    In addition, the agents of the Trustee found woefully incomplete information with regard to the present locations of the District Council's bank and investment accounts, leaving them unable to determine where all of the District Council's monies are being held and in what amounts.

132.    Upon information and belief, the District Council Defendants have wrongfully converted the District Council's property including the books and records, computers, and monetary assets.

133.    As a result of the District Council Defendant's breach of their constitutional obligations and  wrongful conversion, an accounting is necessary, as no adequate remedy at law exists in the absence of the books and records necessary to determine the value of the District Council's present assets.

134.    By reason of the foregoing, the District Council Defendants should be directed to provide an accounting of all the property, assets, debits, and expenditures of the District Council for a period to be determined by the Court.

21

AS AND FOR A TWELFTH CAUSE OF ACTION

(LOCAL 1018'S CLAIM FOR TORTIOUS INTERFERENCE REGARDING THE LOCAL
1018 MEMBERS AS AGAINST THE LOCAL 1018 DEFENDANTS)

135.    Plaintiff LOCAL 1018 repeats and realleges each and every allegation contained in
paragraphs 1 through 134 of this Complaint, as if fully set forth herein.

136.    After the executive board of Local 1018 resigned *en masse* as members of Local 1018
on May 6, 2005, defendant Luciano Falzone, upon information and belief, sent a letter dated May
9, 2005 to Local 1018 members in which he purported to speak on behalf of Local 1018.

137.    By the May 9, 2005 letter, defendant Luciano Falzone knowingly misrepresented that
Local 1018 was no longer affiliated with LIUNA and that it had merged with defendant Local 175.

138.    Upon information and belief, the Local 1018 Defendants acted in concert with
defendant Luciano Falzone in preparing and disseminating the May 9, 2005 letter to the Local 1018
membership intended for Local 1018 members to mistakenly believe that Local 1018 had merged
with defendant Local 175 in order to wrongfully induce Local 1018 members to sign union dues
check-offs authorization cards and representation cards for defendant Local 175.

139.    Upon information and belief, the Local 1018 Defendants have, by deception,
wrongfully obtained from Local 1018 members dues checkoffs authorization cards and
representation cards for defendant Local 175.

140.    Upon information and belief, the Local 1018 Defendants were aware that Local 1018
members had executed valid dues check-offs authorization cards with Local 1018 which remained
in full force and effect and that the primary source of income for Local 1018 is the receipt from
employers signatory to collective bargaining agreements with Local 1018 of dues checkoffs withheld
from the paychecks of Local 1018 members employed by those signatory employers.

141.    As a result of the aforesaid wrongful actions of the Local 1018 Defendants, Local
1018 members have been wrongfully induced to sign dues check-offs authorization cards and
representation cards with defendant Local 175, and plaintiff Local 1018 has been damaged in an
amount to be determined.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION

### (LOCAL 1018'S CLAIM FOR TORTIOUS INTERFERENCE REGARDING THE LOCAL 1018 MEMBERS AS AGAINST DEFENDANT LOCAL 175)

142.    Plaintiff Local 1018 repeats and realleges each and every allegation contained in paragraphs 1 through 141 of this Complaint, as if fully set forth herein.

143.    After the executive board of Local 1018 resigned *en masse* as members of Local 1018 on May 6, 2005, defendant Luciano Falzone, upon information and belief, sent a letter dated May 9, 2005 to LOCAL 1018 members in which he purported to speak on behalf of Local 1018.

144.    By the May 9, 2005 letter, defendant Luciano Falzone, acting in his position as Business Manager of Local 175, knowingly misrepresented that Local 1018 was no longer affiliated with LIUNA and that it had merged with defendant Local 175.

145.    The May 9, 2005 letter was on the letterhead of defendant Local 175.

146.    Upon information and belief, defendant Local 175 acted in concert with the Local 1018 Defendants in preparing and disseminating the May 9, 2005 letter to the Local 1018 membership and intended for Local 1018 members to mistakenly believe that Local 1018 had merged with defendant Local 175 in order to wrongfully induce Local 1018 members to sign union dues check-offs authorization cards and representation cards for defendant Local 175.

147.    Upon information and belief, defendant Local 175 has, by deception, wrongfully obtained from Local 1018 members dues checkoffs authorization cards an representation cards for defendant Local 175.

148.    Upon information and belief, defendant Local 175 was aware that Local 1018 members had executed valid dues check-offs authorization cards with Local 1018 which remained in full force and effect and that the primary source of income for Local 1018 is the receipt from employers signatory to collective bargaining agreements with Local 1018 of dues checkoffs withheld from the paychecks of Local 1018 members employed by those signatory employers.

149.    As a result of the aforesaid wrongful actions of the defendant Local 175, Local 1018 members have been wrongfully induced to sign dues check-offs authorization cards and representation cards with defendant Local 175, and plaintiff Local 1018 has been damaged in an amount to be determined.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## (LOCAL 1018'S CLAIM FOR TORTIOUS INTERFERENCE REGARDING THE
## SIGNATORY EMPLOYERS AS AGAINST THE LOCAL 1018 DEFENDANTS)

150.    Plaintiff Local 1018 repeats and realleges each and every allegation contained in paragraphs 1 through 149 of this Complaint, as if fully set forth herein.

151.    Upon information and belief, there exist a number of valid collective bargaining agreements between Local 1018 and various employers with expiration dates on and after June 30, 2005 (the "Existing Agreements").

152.    The employers bound to the Existing Agreements have an obligation to negotiate the terms of new collective bargaining agreements with Local 1018 and to comply with the terms and conditions of the Existing Agreements while bargaining over the terms and conditions of new collective bargaining agreements.

153.    The Local 1018 Defendants were aware of the existence of the Existing Agreements.

154.    Upon information and belief, the Local 1018 Defendants have colluded with defendant Local 175 to knowingly misrepresent to employers bound to the Existing Agreements that defendant Local 175 had replaced Local 1018 as the collective bargaining agent for Local 1018 members and that said members had signed dues check-offs authorization cards and representation cards with defendant Local 175.

155.    Upon information and belief, the employers bound to the Existing Agreements have breached their obligations to Local 1018 in failing to remit dues check-offs to Local 1018 and in commencing negotiations for new collective bargaining agreements with defendant Local 175 rather than Local 1018.

156.    As a result of the aforesaid wrongful actions of the Local 1018 Defendants, employers bound to the Existing Agreements have breached their obligations to plaintiff Local 1018, and plaintiff Local 1018 has been damaged in an amount to be determined.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
### (LOCAL 1018'S CLAIM FOR TORTIOUS INTERFERENCE REGARDING THE SIGNATORY EMPLOYERS AS AGAINST DEFENDANT LOCAL 175)

157.    Plaintiff Local 1018 repeats and realleges each and every allegation contained in paragraphs 1 through 156 of this Complaint, as if fully set forth herein.

158.    Upon information and belief, there exists a number of valid collective bargaining agreements between Local 1018 and various employers with expiration dates on and after June 30, 2005 (the "Existing Agreements").

159.    The employers bound to the Existing Agreements have an obligation to negotiate the terms of new collective bargaining agreements with Local 1018 and to comply with the terms and conditions of the Existing Agreements while bargaining over the terms and conditions of new collective bargaining agreements.

160.    Defendant Local 175 was aware of the existence of the Existing Agreements.

161.    Upon information and belief, defendant Local 175 colluded with the Local 1018 Defendants to knowingly misrepresent to employers bound to the Existing Agreements that defendant Local 175 had replaced Local 1018 as the collective bargaining agent for Local 1018 members and that said members had signed dues check-offs authorization cards and representation cards with defendant Local 175.

162.    Upon information and belief, the employers bound to the Existing Agreements have breached their obligations to Local 1018 in failing to remit dues check-offs to Local 1018 and in commencing negotiations for new collective bargaining agreements with defendant Local 175 rather than Local 1018.

163.    As a result of the aforesaid wrongful actions of defendant Local 175, employers bound to the Existing Agreements have breached their obligations to plaintiff Local 1018, and plaintiff Local 1018 has been damaged in an amount to be determined.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION

## (LOCAL 1018's CLAIM FOR BREACH OF FIDUCIARY OBLIGATIONS AGAINST THE LOCAL 1018 DEFENDANTS)

164.    Plaintiff Local 1018 repeats and realleges each and every allegation contained in paragraphs 1 through 163 of this Complaint, as if fully set forth herein.

165.    In their capacity as the Executive Board of Local 1018, the Local 1018 Defendants have, at all times material hereto, occupied positions of trust with relation to Local 1018 and its members. They had an affirmative duty under the LMRDA to maintain books and records and file financial reports and to expend funds of Local 1018 entrusted to them solely for the purposes for which such expenditures were duly and legally authorized by Local 1018 and not for their own personal use or the use of others.

166.    In their fiduciary capacity, the Local 1018 Defendants are also under the duty to account to Local 1018 and its members for all funds that have come into their hands or have been disbursed by them or by other persons under their direction.

167.    Upon information and belief, the Local 1018 Defendants have converted the books and records, computers, and other assets of Local 1018 prior to the imposition of an emergency trusteeship by LIUNA, divesting Local 1018 of its assets and the ability to assess the extent of the divestiture.

168.    Upon information and belief, the Local 1018 Defendants have sought to strip Local 1018 of its primary source of income by wilfully misrepresenting to Local 1018's members that it had merged with defendant Local 175, for which they currently serve as officers or employees, and wilfully misrepresenting to employers bound to the Existing Agreements that defendant Local 175 had replaced Local 1018 as the collective bargaining agent for Local 1018 members and that said members had signed dues check-offs authorization cards and representation cards with defendant Local 175.

169.    By the foregoing misconduct, the Local 1018 Defendants have violated Article II, §1(c) of the Local Constitution which provides that a local union must "conduct its affairs in a manner which would enhance, conserve and protect the welfare and interest of the International Union, its affiliates and members." Moreover, they were in breach of their fiduciary duties under

the provisions of the LIUNA Constitution, and were in violation of the provisions of § 501(a) of the LMRDA applicable to them as officers and representatives of Local 1018.

170.    As a result of the aforesaid breaches of their fiduciary duties by the Local 1018 Defendants, plaintiff Local 1018 has been damaged in an amount to be determined.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION

### (PLAINTIFFS' CLAIM FOR CONVERSION AGAINST DEFENDANTS TRUST FUNDS AND/OR HOLDING CORP.)

171.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 170 of the Complaint, as if fully set forth herein.

172.    Plaintiffs own and have a right to immediately possess certain tangible personal property, to wit; written records and documents, that are being retained by the Trust Funds and/or the Holding Corp.

173.    Upon information and belief, defendants Trust Funds and/or Holding Corp. have absconded with said personal property.

174.    Upon information and belief defendants Trust Funds and/or Holding Corp. have deprived Plaintiffs of the possession of Plaintiffs' personal property; to wit; records and other written documents being held by the Trust Funds and/or the Holding Corp. Defendants Trust Funds and/or Holding Corp. committed an unauthorized act by assuming dominion and control over Plaintiffs' personal property to the exclusion of Plaintiffs' rights.

175.    As a result of the aforesaid conversion, Plaintiffs have been damaged in an amount to be determined.

## AS AND FOR AN EIGHTEENTH CAUSE OF ACTION

### (PLAINTIFFS' CLAIM FOR CONVERSION AGAINST INDIVIDUAL DEFENDANTS)

176.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 175 of the Complaint as if fully set forth herein.

177.    Plaintiffs own and have a right to immediately possess certain tangible personal property, to wit; written records and documents, that are being retained or controlled by the Individual Defendants.

27

178.   Upon information and belief, the Individual Defendants have absconded with said personal property.

179.   Upon information and belief, the Individual Defendants have deprived Plaintiffs of the possession of Plaintiffs' personal property; to wit; records and other written documents being held or controlled by the Individual Defendants.  The Individual Defendants committed an unauthorized act by assuming dominion and control over Plaintiffs' personal property to the exclusion of Plaintiffs' rights.

180.   As a result of the aforesaid conversion, Plaintiffs have been damaged in an amount to be determined.

WHEREFORE, Plaintiffs demand judgment as follows:

a)   for an Order directing the Individual Defendants to recognize that plaintiff Trustee has been duly appointed in accordance with the LIUNA Constitution and directing said Individual Defendants to cooperate with the Trustee;

b)   for an injunction ordering defendants Trust Funds and Holding Corp. to provide the Local Unions and the Trustee with access to the offices occupied by the Local Unions at 136-25 37th Avenue, Flushing, New York;

c)   for an Order directing defendants Trust Funds and Holding Corp. to turn over to plaintiff Trustee all property, records, and assets of the Local Unions in their possession and control;

d)   for an Order directing the Local 1018 Defendants to turn over to Local 1018 and the Trustee all property, records, and assets of Local 1018 in their possession or control;

e)   for an Order directing the Local 1010 Defendants to turn over to Local 1010 and the Trustee all property, records, and assets of Local 1010 in their possession or control;

f)   for an Order directing the District Council Defendants to turn over to the District Council and the Trustee all property, records, and assets of the District Council in their possession or control;

g)   for an Order directing the Local 1018 Defendants to provide an accounting of all of the assets, property, and records of Local 1018 that have ever been in their possession or control;

h)   for an Order directing the Local 1010 Defendants to provide an accounting of all of the assets, property, and records of Local 1010 that have ever been in their possession or control;

28

i)      for an Order directing the District Council Defendants to provide an accounting of all of the assets, property, and records of the District Council that have ever been in their possession or control;

j)      on behalf of Local 1018 against the Local 1018 Defendants for tortious interference with the Local 1018 members and the Local 1018 Signatory Employers, in an amount to be determined;

k)      on behalf of Local 1018 against Local 175 for tortious interference with the Local 1018 members and the Local 1018 Signatory Employers, in an amount to be determined;

l)      on behalf of Local 1018 against the Local 1018 Defendants for breach of fiduciary duty in an amount to be determined;

m)      on behalf of Plaintiffs against the Trust Funds and the Holding Corp. for conversion of the Local Unions' property, in an amount to be determined;

n)      on behalf of Plaintiffs against the Individual Defendants for conversion of the Local Unions' property, in an amount to be determined;

o)      for such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 13, 2005

                                    GORLICK, KRAVITZ & LISTHAUS, P.C.
                                    Attorneys for Plaintiffs

                                    By: _____
                                        Barbara S. Mehlsack, Esq.
                                        BM 1390
                                        17 State Street, 4th Floor
                                        New York, New York 10004
                                        (212) 269-2500
                                        bmehlsack@gkllaw.com

29